No. 15-1640

# United States Court of Appeals
# For the First Circuit

_____

**LISA C. PAZOL, MARIA C. NEWMAN, LISA RUSS, AND AUDREY J. BENNETT,**
**on behalf of themselves and others similarly situated,**
**Plaintiffs,**

**v.**

**TOUGH MUDDER INCORPORATED, TOUGH MUDDER, LLC**
**and BK BRIDGE EVENTS, LLC,**
**Defendants.**

_____

**ON APPEAL FROM ORDERS OF THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS NO. 4:14-cv-40180-TSH**

_____

**BRIEF OF APPELLANTS - PLAINTIFFS
LISA C. PAZOL, MARIA C. NEWMAN, LISA RUSS, AND AUDREY J. BENNETT,
on behalf of themselves and others similarly situated**

_____

Barry M. Altman, Esq.  BBO #016710
ALTMAN & ALTMAN
404 Main Street, Suite 3
Wilmington, MA 01887
(978) 658-3388
altmanlaw2@gmail.com

James L. O'Connor, Jr., Esq. BBO #563450
James M. Galliher, Esq. BBO #561394
C. Deborah Phillips, Esq. BBO #398270
NICKLESS, PHILLIPS and O'CONNOR
625 Main Street
Fitchburg, MA 01420
978-342-4590
joconnor@NPOlegal.com
jgalliher@NPOlegal.com
dphillips@NPOlegal.com

Dated:  November 6, 2015

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**REASONS WHY ORAL ARGUMENT SHOULD BE HEARD** . . . . . . . . . . .1

**JURISDICTIONAL STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**STATEMENT OF ISSUES PRESENTED** . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**SUMMARY OF ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    **I.    STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    **II.   THE VALUE OF THIS CASE DOES NOT EXCEED $5 MILLION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    **III.  BK BRIDGE'S MEDIATION PROVISION IS NOT ENFORCEABLE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    **IV.  BK BRIDGE'S ARBITRATION CLAUSE IS NOT ENFORCEABLE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        **A. No Contract Was Consummated Between The Consumers and BK Bridge** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            **1. No Contract Was Formed Because of Lack of Consideration** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            **2. No Contract Was Formed Because of Indefiniteness** . . . . . . 16

            **3. No Contract Was Formed Because There Was No Meeting Of The Minds** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**4. No. Contract Was Formed Because BK Bridge Failed to Perform A Condition Precedent and/or Impossibility Existed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18**

**5. No Contract Was Formed Because of Mutual Mistake** . . . . . .19

**B. There Was No Meeting of The Minds Concerning the Arbitration Clause** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**C. The Arbitration Clause Lacks Consideration** . . . . . . . . . . . . . . . .22

**D. The Consumers' Claims Do Not Fall Within The Scope of the Arbitration Clause** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

**E. The Arbitration Clause Is Unconscionable** . . . . . . . . . . . . . . . . . 24

**1. The Arbitration Clause Is Procedurally Unconscionable** . . . 25

**2. The Arbitration Clause Is Substantively Unconscionable** . . . 26

**3. The Arbitration Clause (Including The Class Action Waiver) Should Not Be Enforced Or Re-Written** . . . . . . . . . . . . . . . . 28

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**REQUEST FOR ATTORNEYS' FEES AND COSTS** . . . . . . . . . . . . . . . . . 30

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)** . . . . . . . . . . . . . . 32

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**ADDENDUM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# TABLE OF AUTHORITIES

## Cases

*Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 837 N.E. 2d 1121 (2005) .....................................................................................18

*Adelson v. Hananel*, 641 F. Supp. 2d 65 (D. Mass. 2009) *aff'd,* 652 F.3d 75 (1st Cir. 2011) ............................................................................................................17

*Adelson v. Hananel*, 652 F.3d 75 (1st Cir. 2011) ....................................................17

*Advanced Bodycare Solutions, LLC v. Thione International, Inc.*, 524 F.3d 1235 (11th Cir. 2008) ........................................................................................................8

*Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 987 N.E.2d 604, (2013) ...... 19, 26

*American Express Co., v. Italian Colors Restaurant* ___U.S.__ 133 S. Ct. 2304 (2013) .....................................................................................................................28

*Amoche v. Guarantee Trust Life Insurance Company*, 556 F.3d 41(1st Cir. 2009) ................................................................................................................ . .4, 5

*Andermann v. Sprint Spectrum L.P.*, 785 F. 3d 1157 (7th Cir. 2015) .......................9

*Apollo Computer Inc. v. Berg*, 886 F.2d 469 (1st Cir. 1989) ...................................12

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1745 (2011) ........................... 25, 30

*Atalese v. U.S. Legal Services Group, L.P.*, 219 N.J. 430, 99 A. 3d 306 (2014), *cert. den*. 135 S. Ct. 2804 (2015) ...................................................................... 21

*Awuah v. Coverall North America, Inc.*, 554 F.3d 7 (1st Cir. 2009) ........................12

*Backman v. Smirnov*, 751 F. Supp. 2d 304 (D. Mass. 2010) ....................................17

*Berkson v. Gogo LLC*, No. 14-CV-1199, 2015 WL 1600755, at *13 (E.D.N.Y.

 Apr. 9, 2015) .....................................................................................................20

*Bernstein v. W.B. Mfg. Co.,* 235 Mass. 425; 126 N.E. 796 (1920*)*………………15

*Boston Plate & Window Glass Co. v. John Bowen Co.*, 335 Mass. 697, 141 N.E. 2d

 715 (1957) ........................................................................................................19

*Brewer v. Missouri Title Loans*, 364 S.W. 3d 486 (2012)(en banc), *cert. den.*

 (2012) ...............................................................................................................28

*Brown v. MHN Government Services, Inc.*, 306 P.3d 948 (2013) .................... 26, 29

*Burten v. Milton Bradley Co*., 763 F.2d 461 (1st Cir. 1985) ....................................21

*Canney v. New England Tel. & Tel. Co.*, 353 Mass. 158, 228 N.E. 723 (1967) 13

*Chase Commercial Corp. v. Owen*, 32 Mass. App. Ct. 248; 588 N.E. 2d 705 (1992)

 ............................................................................................................................25

*City of Haverhill v. George Brox, Inc.*, 716 N.E. 2d 138 (1999) .............................18

*Coll. Of Dental Surgeons of Puerto Rico v. Conn. Gen. Life Ins, Co., 585 F.3d*  33,

 40 (1st Cir. 2009) ...............................................................................................7

*Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F. 3d 1(1st Cir. 1994) ......14

*Cutler Associates, Inc. v. Palace Constr.,* LLC, 2015 WL 5569987, at *6 (D. Mass.

 Sept. 22, 2015) ..................................................................................................23

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014)........5, 7

*Davis v. H.S. & M.W. Snyder, Inc.*, 252 Mass. 29, 36 147 N.E. 30 (1925)............15

*Dialysis Access Center, LLC v. RMS Lifeline, Inc.,* 638 F.3d 367 (1st Cir. 2011)

.................................................................................................... ….1, 24

*Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, (1st Cir. 2015) ....9, 10

*Feeney v. Dell*, 454 Mass. 192; 908 N.E. 2d 753, (2009)................................. 11, 29

*Feeney v. Dell*, 466 Mass. 1001; 993 N.E. 2d 329, (2013)......................................11

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, (1995)............................11

*Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 113 Cal. Rptr. 2d

376 (2001)...........................................................................................29

*Foss v. Circuit City Stores, Inc.*, 477 F. Supp. 2d 230 (D. Me. 2007) ...................10

*Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197 (2013)................................28

*Gilbert Street Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185

(2009) ..................................................................................................12

*Guidotti v. Legal Helpers Debt Resolution*, 2014 WL 6863183, *1 (D.N.J.

December 3, 2014)...............................................................................21

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3rd Cir. 2013)..14

*HIM Portland, LLC. v. DeVitto Builders, Inc.* 317 F. 3d 41 (1st Cir. 2003)............12

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, (2002) ................................11

*JPMorgan Chase & Company, Inc. v. Cassarano*, 81 Mass. App. Ct. 353, 963 N.E.

2d 108 (2012).....................................................................................8, 17

*Kristian v. Comcast Corp.*, 446 F.3d 25, (1st Cir. 2006)................................... 11, 28

*Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49 (1st Cir. 2002) .......................9

*Linthicum v. Archambault*, 379 Mass. 381 N.E. 2d 482 (1979)..............................27

*Lonnqvist v. Lammi*, 240 Mass. 371, 134 N.E. 255 (1922) ....................................18

*Lou v. MA Labs, Inc.*, 2013 WL 2156316 (N.D. Cal. May 17, 2013)....................28

*Machado v. System4 LLC*, 471 Mass. 204, 28 N.E. 3d 401 (2015)........... 25, 28, 29

*McCarthy v. Azure*, 22 F.3d 351, (1st Cir. 1994) ....................................................12

*McCarthy v. Tobin*, 429 Mass. 84, 706 N.E. 2d 629 (1999)...................................13

*McInnes v. LPL Financial, LLC*, 466 Mass. 256, 944 N.E. 2d 790 (2013)...... 27, 28

*Miller v. Cotter*, 448 Mass. 671; 863 N.E. 2d 537 (2007)................... 22, 25, 26, 27

*Moelis v. Berkshire Life Insurance Company*, 451 Mass. 483, (2008) ....................6

*Narayan v. The Ritz-Carlton Dev. Co.*, Inc., 135 Haw. 327, 350 P.3d 995 (2015)

............................................................................................................... .21, 22

*Noohi v. Toll Bros., Inc.*, 708 F.3d 599 (2013).......................................................22

*Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Company*,

986 F. 2d 607 (1st Cir. 1993)................................................................................23

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...........................................5

PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir.2010)...........................23

*Price v. Price*, 348 Mass. 663, 204 N.E. 2d 902 (1965).........................................16

*Price v. Price*, 382 U.S. 820 (1965)......................................................................16

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, (2010).....................................13

*Rizika v. Donovan*, 45 Mass. App. Ct. 159, 695 N.E. 2d 1097, (1998)...................18

*Rosenfield v. U. S. Trust Co.*, 290 Mass. 210, 195 N.E. 323, (1935) ......................17

*Sanford v. Memberworks, Inc.*, 483 F.3d 956, (9th Cir. 2007)..................................9

*SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, (3rd Cir. 2013)............9, 14

*Sengupta v. Tough Mudder LLC*, Circuit Court of Marshall County, West Virginia,

    No. 14-C-66-H (January 9, 2015)....................................................... 24, 25, 26, 27

*Shawmut – Canton LLC v. Great Spring Waters of America, Inc.*, 62 Mass. App.

    Ct. 330; 816 N.E. 2d 545 (2004) ........................................................................19

*Skirchak v. Dynamics Research Corp.*, 508 F. 3d 49, (1st Cir. 2007).....................25

*Soto v. State Industrial Products, Inc.*, 642 F.3d 67 (1st Cir. 2011) ............. 4, 14, 22

*Spence v. Reeder*, 382 Mass. 398, 416 N.E. 2d 914 (1981) ....................................27

*Storie v. Household Int'l, Inc.*, U.S. Dist. Ct., No. 03-40268 (D. Mass. Sept. 22,

    2005) ....................................................................................................................25

*Thompson v. Lithia Chrysler Jeep Dodge of Great Falls*, 185 P.3d 332 (Mont.

    2008) ....................................................................................................................10

*Tilo Roofing Co. v. Pellerin*, 331 Mass. 743, 122 N.E. 2d 460, (1954) ..................18

*Tinder v. Pinkerton Sec.*, 305 F.3d 728 (7th Cir. 2002)................................... 4, 5, 14

*Vasconcellos v. Arbella Mutual Insurance Company*, 67 Mass. App. Ct. 277, 853

    N.E. 2d 571 (2006) .............................................................................................16

*Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211 (5th Cir. 2003) .9

**Statutes**

**Federal**

9 U.S.C. § 1…………………………………………………………..... 8

9 U.S.C. § 16 ..........................................................................................1

28 U.S.C. §1332 ............................................................................ 1, 2, 4

28 U.S.C. §1441(a) ................................................................................1

**State**

M.G.L. c. 93 § 101 ..............................................................................27

M.G.L. c. 93A ........................................................................... 6, 27, 30

940 C.M.R. 3.01 ........................................................................... 19, 26

**Other Authorities**

Fair Pay and Safe Workplaces Executive Order 2014 WL 3749746 (July 31, 2014)

.................................................................................................8

Fed. R. Evid. 301 ................................................................................24

*EEOC Sues Doherty Enterprises over Mandatory Arbitration Agreement* (Sept. 9,

2014) www.eeoc.gov ................................................................8

http://www.consumerfinance.gov/f/201510_cfpb_small-business-review-panel-

packet-explaining-the-proposal-under-consideration.......................................8, 9

http://www.consumerfinance.gov/reports/arbitration-study-report-to-congress-
2015/ ...........................................................................................................8

www.adr.org...........................................................................................................12

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Pursuant to Fed. R. App. P. 34, Plaintiffs-Appellants respectfully request that this Court hear oral argument of this appeal. This case involves complicated legal issues involving a forced arbitration clause in an adhesive consumer contract and state contract law. Oral argument will assist this Court in ruling on emerging issues in this evolving area of law.

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Massachusetts had putative jurisdiction over this removed matter under the Class Action Fairness Act ("CAFA"). See 28 U.S.C. §§1332(d) and 1441(a). This Court has jurisdiction over the arbitration matter under 9 U.S.C. § 16, which allows for an appeal from a District Court's order of dismissal coupled with an order compelling arbitration. *See Dialysis Access Center, LLC v. RMS Lifeline, Inc.,* 638 F.3d 367, 372 (1st Cir. 2011). This Court also has jurisdiction over the removal matter. See Judgment entered on September 14, 2015 in related No. 15-8012.

On April 22, 2015 the District Court entered an Order of Dismissal and compelled arbitration. On May 18, 2015 Plaintiffs-Appellants filed a timely notice of appeal.

## STATEMENT OF ISSUES PRESENTED

1.  Whether the District Court erred in ruling that the amount in controversy in this case meets the jurisdictional requirement under CAFA.

2.  Whether the District Court erred in compelling mediation.

3.  Whether the District Court erred in compelling arbitration.

## STATEMENT OF THE CASE

This appeal involves the CAFA jurisdictional threshold and forced arbitration in a consumer adhesion contract.

Mudderella Boston 2014 was promoted as an obstacle course event to be held on September 6, 2014 in Haverhill, Massachusetts. (A. 25)

According to Defendants-Appellees, 11,307 consumers paid Defendant-Appellee BK Bridge Events, LLC ("BK Bridge"), the organizer of Mudderella Boston 2014, $1,065,040.35 to register as participants. (A. 229)

BK Bridge never obtained a permit for the event. (A. 25)

After Plaintiffs-Appellants ("the Consumers") registered, BK Bridge announced it was moving Mudderella Boston 2014 to Amesbury, Massachusetts. (A. 26) However, again, BK Bridge failed to obtain a permit. Subsequently, BK Bridge moved the event to Westbrook, Maine, which is 79 miles from Haverhill. (A. 26)

Of these 11,307 registrants, 6,960 (61.5%) did not attend. Those who did not attend paid a total of $617,574.86 to BK Bridge. (A. 229)

BK Bridge refused to provide refunds. Instead, BK Bridge announced it would only transfer the registration fees paid to another event in 2014 or 2015.[1] (A.27)

According to BK Bridge, when the Consumers and other registrants registered for Mudderella Boston 2014, they electronically assented to an on-line arbitration clause entitled "Mediation and Arbitration" ("Arbitration Clause") deeply embedded in a non-negotiable putative click-wrap contract entitled Participant Assumption of Risk, Waiver of Liability, and Indemnity Agreement ("Agreement") contained in a small scrollable window. (A. 168-169, 187)

When they registered for Mudderella Boston 2014, the Consumers did not notice the Arbitration Clause. (A. 326, 328-329, 371-372) The Consumers did not negotiate with BK Bridge. (A. 240, 248, 326, 328-329, 371-372) In fact, according to BK Bridge, the part of the Agreement that was visible to registrants on their computer screens without scrolling was minimal. (A. 241) The Arbitration Clause was not visible without scrolling. (A. 241, 326, 328-329, 371-372).

In registering, one did not have to scroll through the scroll boxes to "accept" by clicking. (A. 192-193, 195-196, 198-199, 201-202).

The Consumers filed a putative class action in Worcester Superior Court.

---

[1] The Consumers are unable to inform this Court how many registrants applied for a transfer of registration fees paid to another event because the District Court did not allow them to conduct any discovery. This being so, the Consumers cannot confirm any of BK Bridge's data.

Defendants-Appellees removed the case to the District Court. The Consumers filed a Motion to Remand. Defendants-Appellees filed a Motion to Dismiss and Compel Mediation and Arbitration. After a combined non-evidentiary hearing, the District Court, denied the Motion To Remand and dismissed the case and compelled mediation and arbitration.

## SUMMARY OF ARGUMENT

This case involves an exploitive forced arbitration clause in a consumer adhesion contract. The Consumers and BK Bridge did not form a contract. Without a container contract, there can be no enforceable arbitration clause. The Arbitration Clause in this case is otherwise unenforceable.

On the issue of CAFA removal, BK Bridge did not show that the reasonably probable value of this case exceeds $5 million.

## ARGUMENT

## I.    STANDARD OF REVIEW

Where the District Court denies a motion to remand without making findings of fact, such decision is reviewed by this Court *de novo. Se*e *Amoche v. Guarantee Trust Life Insurance Company*, 556 F.3d 41, 48 (1ˢᵗ Cir. 2009).

Where the District Court rules on a motion to compel arbitration without conducting a trial, such decision is reviewed by this Court *de novo*. *See Soto v. State Industrial Products, Inc.*, 642 F.3d 67, 72 (1ˢᵗ Cir. 2011), citing *Tinder v. Pinkerton*

*Sec.*, 305 F.3d 728, 733 (7th Cir. 2002).

## II.  THE VALUE OF THIS CASE DOES NOT EXCEED $5 MILLION

After removal, the Consumers filed a motion to remand and a motion to conduct jurisdictional discovery. Both motions were denied by the District Court without findings. (A. 147-148, 156-157, 387, 388)

The Consumers filed a Petition For Permission To Appeal ("Petition") with this Court, No. 15-8012. On September 14, 2015, this Court entered a Judgment denying the Petition, stating that the denial is without prejudice to the Consumers seeking "full consideration" of the removal issue.

The Consumers were not allowed to conduct pre-hearing jurisdictional discovery. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) ("Discovery may be taken with regard to [the jurisdictional threshold])." The District Court did not take into account that Appellees had exclusive access to the relevant information concerning jurisdiction. *See Amoche*, 556 F.3d at 51.  Both sides are entitled to submit proof, but the Consumers could not submit proof as they were denied discovery.  *See Dart Cherokee*, 135 S. Ct. at 554.

The District Court ignored that the Consumers may only recover damages on behalf of Massachusetts residents in a state court action regardless of the First Amended Complaint. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985); *Moelis v. Berkshire Life Insurance Company*, 451 Mass. 483, 486-489

(2008).[2]

Appellees employed rank speculation in asserting that the reasonably probable amount in controversy exceeded $5 million. *See Amoche*, 556 F. 3d at 48-49. They claimed 13,200 individuals registered for Mudderella Boston 2014, but refused to specify the number from Massachusetts. They then claimed that the average registration fee paid by **all** registrants was $89.44. Multiplying the total number of registrants by the average registration fee, they arrived at $1,180,608 in damages. Appellees then trebled that damages amount pursuant to M.G.L. c. 93A to $3,541,824. (A. 15)

Appellees next incorrectly inflated damages by surmising that **all** 13,200 registrants incurred added lodging expenses in the average amount of $113, measured by the irrelevant federal lodging reimbursement rate. They calculated this element of damages at $1,491,600, and then trebled the amount to $4,474,800. Appellees then added the trebled damages amounts together, asserting that the amount in controversy was $8,016,624. (A. 16)

In reality, at least 4,347 registrants attended the event. (A. 223-224) They would not be entitled to a refund. Depending on where they lived, they may not have incurred any additional expenses to attend the event in Maine. As for the at least

---

[2] In the event the case remained in the United States District Court, the Consumers reserved their right to seek certification of a nationwide class.

6,960 registrants who did not attend, not all of them lost hotel deposits. A theoretical amount in controversy does not establish the reasonably probable amount in controversy.

Appellees possess, but failed to provide to the District Court and the Consumers were not allowed to discover, the number of Massachusetts residents who 1) registered for Mudderella Boston 2014, but did not participate; and 2) registered for Mudderella Boston and participated, along with their residential addresses.

In any event, Appellees also took the position below that the Arbitration Clause (in existence prior to removal) makes class certification impossible, and that the amount in controversy for the four (4) Consumers in the Court ordered arbitration is approximately $89.44, possibly trebled, plus any other damages, attorneys' fees and costs. This is incorrect. *See Coll. Of Dental Surgeons of Puerto Rico v. Conn. Gen. Life Ins, Co., 585 F.3d* 33, 40 (1st Cir. 2009).

The District Court failed to make required findings of jurisdictional fact. *See Dart Cherokee*, 135 S. Ct. at 554 ("In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.").

## III.    <u>BK BRIDGE'S MEDIATION PROVISION IS NOT ENFORCEABLE</u>

The Arbitration Clause provides in pertinent part: "In the event of a legal issue, I agree to engage in good faith efforts to mediate any dispute that might arise."

(A. 168) The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et. seq.* does not apply to mediation agreement. *See Advanced Bodycare Solutions, LLC v. Thione International, Inc.*, 524 F.3d 1235, 1240 (11th Cir. 2008). Furthermore, the sparse mediation provision is otherwise unenforceable. It employs the word "I," making it one-sided. *See Id.* Appellees Tough Mudder Incorporated and Tough Mudder, LLC are not parties to the provision. *See also Id.* The mediation provision is fatally indefinite as it does not specify the forum, the rules, the mediator or location. *See JPMorgan Chase & Company, Inc. v. Cassarano*, 81 Mass. App. Ct. 353, 354-355, 963 N.E. 2d 108, 110 (2012).

## IV.  **BK BRIDGE'S ARBITRATION CLAUSE IS UNENFORCEABLE**

Section 2 of the FAA[3] is the statute's key provision. Because arbitration is a

---

[3] The Consumers dispute that there remains a strong federal policy favoring forced arbitration in consumer disputes.  In 2014, the Equal Employment Opportunity Commission ("EEOC") filed a complaint in federal court against an employer which required its employees to submit to binding arbitration instead of filing discrimination claims with the EEOC. *See EEOC Sues Doherty Enterprises over Mandatory Arbitration Agreement* (Sept. 9, 2014) www.eeoc.gov. Also in 2014, President Obama signed the Fair Pay and Safe Workplaces Executive Order, prohibiting pre-dispute binding arbitration agreements covering discrimination, assault and sexual harassment claims in contracts between large federal contractors and their employees. 2014 WL 3749746 (July 31, 2014). The Consumer Financial Protection Bureau ("CFPB") created by Congress in March 2015 issued an Arbitration Study finding among other things: a total of four consumers with a claim of less than $1,000 obtained relief in an AAA arbitration in 2010 and 2011. http://www.consumerfinance.gov/reports/arbitration-study-report-to-congress-2015/ On October 7, 2015 the CFPB announced that it plans to propose rules that would prevent consumer financial services companies from using arbitration clauses to bar class actions.  http://www.consumerfinance.gov/f/201510_cfpb_small-

matter of contract the Consumers raise two (2) challenges to arbitration. *See Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 96 (1st Cir. 2015). The first challenge is that no contract as a whole (the Agreement) was ever actually formed. *Id.* at 97 and n.7. *See also SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3rd Cir. 2013) (challenge to the formation of a contract based on an ultra vires argument); *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 964 (9th Cir. 2007)("We must therefore vacate the July 2002 order compelling arbitration and remand the case to the district court to determine whether a contract was formed…."); *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 219 (5th Cir. 2003) ("where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute"); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 53-54 (1st Cir. 2002) (Supreme Court's *Prima Paint* decision has never been extended to require arbitrators to

---

business-review-panel-packet-explaining-the-proposal-under-consideration.
"Companies use [arbitration clauses] to block class action lawsuits. They thus provide themselves with a free pass from being held accountable by their customers." Prepared remarks CFPB Director Richard Cordray, October 7, 2015. In any event, the instant Arbitration Clause should be viewed neutrally (as opposed to with favor) by this Court. *See Andermann v. Sprint Spectrum L.P.*, 785 F. 3d 1157, 1159 (7th Cir. 2015) (observing that it is not clear that arbitration should be preferred to litigation or why arbitration terms should be distinguished from other contract terms).

adjudicate a party's contention, supported by substantial evidence, that a contract never existed at all); *Foss v. Circuit City Stores, Inc.*, 477 F. Supp. 2d 230, 235 (D. Me. 2007)(challenge to existence of contract was for the court, and not the arbitrator, to decide); *Thompson v. Lithia Chrysler Jeep Dodge of Great Falls*, 185 P.3d 332, 336-338 (Mont. 2008) ("If the formation of a contract never occurred, then the parties never agreed to arbitrate and it would be inappropriate to submit the matter to arbitration.") The Consumers' second challenge is that the Arbitration Clause itself is unenforceable. *Farnsworth*, 790 F.3d at 98.

Before this Court can address these two challenges to arbitration, three preliminary issues must be decided. First, although the Venue and Jurisdiction clause is not clear, (A. 173 fn. 8) Massachusetts (as opposed to Maine) contract law should apply because Mudderella Boston 2014 was promoted as being held in Massachusetts, even though it was eventually moved to Maine**.** There is an element of unfair surprise here. How would a registrant know what state's law would apply?

Second: What does the Arbitration Clause consist of? The Agreement contains a short paragraph entitled "Mediation and Arbitration," which does not include a self-contained class action waiver or saving clause. (A. 187) Is the Arbitration Clause deemed to include any other provisions appearing in the

Agreement, such as "Severability" and/or "Class Actions"[4]? *See Kristian v. Comcast Corp.*, 446 F.3d 25, 47 (1st Cir. 2006). If all or some of these provisions are deemed part of the Arbitration Clause, there are elements of oppression and unfair surprise. Defendants-Appellees themselves argued below: "Notably, even if the class action waiver were deemed invalid, the waiver appears in a separate, severable provision of the Agreement, and does not impact the enforceability of the Arbitration Provision." (A. 175 n. 9)

The third preliminary issue is whether there was a valid agreement to arbitrate arbitrability. The District Court implicitly ruled that there was no such agreement because it decided all issues itself. "Gateway" disputes such as the validity and enforceability of an arbitration clause are presumptively for a court to decide unless the parties agreed to arbitrate gateway issues. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). A heightened standard of clear and unmistakable evidence of intent is required in order to require parties to arbitrate the question of arbitrability. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In this case, such clear and unmistakable evidence is lacking. Tough Mudder Incorporated and Tough Mudder, LLC are not parties to the Arbitration Clause. (A. 240, 184-190, 171) The Consumers did not agree with them to arbitrate arbitrability.

---

[4] Under Massachusetts law, a class action waiver is contrary to public policy. *Feeney v. Dell*, 454 Mass. 192, 210; 908 N.E. 2d 753, 768-769 (2009), abrogated on other grounds 466 Mass. 1001, 993 N.E. 2d 329 (2013).

*See McCarthy v. Azure*, 22 F.3d 351, 355-356 (1st Cir. 1994). The Arbitration Clause speaks of unnamed AAA rules "then in effect." (A. 187) Given this vague allusion, there was no meeting of the minds for an arbitrability delegation.

First, the applicable AAA rules are not specified. *Cf. HIM Portland, LLC. v. DeVitto Builders, Inc.* 317 F. 3d 41, 43 (1st Cir. 2003) ("arbitration…in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association"). Second, the AAA's new Consumer Arbitration Rules did not go into effect until September 1, 2014**.** *See Gilbert Street Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185, 1193 (2009) ("To go beyond the incorporation of an *existent* rule and allow for the incorporation of a rule that might not even come into existence in the future, however, contravenes the clear and unmistakable rule."). *Cf. Awuah v. Coverall North America, Inc.*, 554 F.3d 7 (1st Cir. 2009) (incorporating existent rule); *Apollo Computer Inc. v. Berg*, 886 F.2d 469 (1st Cir. 1989) (same). [5]

Furthermore, forcing the Consumers to arbitrate arbitrability under the

---

[5] Appellees concede, by their actions, that the Arbitration Clause lacks a valid delegation provision. The Mediation and Arbitration provision contained in the Participant Legal Liability Agreement currently available at Mudderella.com/events states in part: "[A]ny question, issue, or dispute as to the arbitrability of any dispute, controversy, or claim arising out of my participation in the Mudderella event, will be submitted to an arbitrator in accordance with the applicable rules of the American Arbitration Association then in effect. The Arbitration Rules of the American Arbitration Association are available on-line at www.adr.org." (Judicial Notice) See also A. 263-264.

circumstances of this case is procedurally and substantively unconscionable, based on surprise, oppression and one-sidedness. *Cf. Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (arbitration provision explicitly assigned decision on unconscionability to arbitrator).

### A. No Contract Was Consummated Between The Consumers and BK Bridge

The Consumers and BK Bridge did not form a binding contract. Where the existence of a contract is in issue, the burden is on the party seeking to show it was made. *Canney v. New England Tel. & Tel. Co.*, 353 Mass. 158, 164, 228 N.E. 2d 723, 728 (1967). Here BK Bridge failed to meet its burden.

BK Bridge promoted Mudderella Boston 2014 to be held on September 6, 2014 in Haverhill. After relieving the Consumers and registrants of their money, BK Bridge eventually moved the event to Westbrook, Maine. BK Bridge apparently argues that it could have moved the event to Alaska or even the war zone of Afghanistan. But the location of the event was material. *See McCarthy v. Tobin*, 429 Mass. 84, 88, 706 N.E. 2d 629, 633 (1999) (location of property is essential term of a real estate offer to purchase contract). Of the alleged 11,307 consumers who registered to participate, 6,960 did not attend Mudderella Boston in Maine. (A. 229)

Nevertheless, the District Court gave short shrift to the Consumers' contract formation arguments, summarily rejecting them as "perfunctory." The District Court did not make its own findings, but instead adopted in full "the reasons set forth in

Defendant's Reply Memorandum, Docket No. 36, at 8-10." (A. 349-351, 391)

Procedurally, the District Court erred by not permitting discovery on issues of contract formation. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 n.5 (3rd Cir. 2013) (compiling federal cases allowing pre-arbitration discovery in various contexts). In its Memorandum and Order the District Court did not articulate what legal standard it was employing. *See Soto v. State Industrial Products, Inc.*, 642 F.3d 67, 72 n. 2 (1st Cir. 2011), citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728 (7th Cir. 2002). An order compelling arbitration should be treated as a summary judgment motion, so the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F. 3d 764 at 774-775; *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d at 271; *Tinder v. Pinkerton Sec.*, 305 F.3d at 735.

The Consumers' formation arguments at a minimum raise disputed issues of material fact. *See Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F. 3d 1, 7 (1st Cir. 1994). The District Court erred by not allowing discovery and by not conducting a jury trial[6] on whether a contract was formed, including but not limited to whether there was a meeting of the minds. *See Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d at 776.

1. **No Contract Was Formed Because of Lack of Consideration**

---

[6] The First Amended Complaint contains a jury trial demand on all issues so triable. (A.32) The Consumers also requested discovery and a trial. (A. 32)

The formation of a binding contract requires mutuality of consideration. *Davis v. H.S. & M.W. Snyder, Inc.*, 252 Mass. 29, 36 147 N.E. 30, 32 (1925); *Bernstein v. W.B. Mfg. Co.*, 235 Mass. 425, 126 N.E. 796 (1920). "To show mutuality of obligation, both parties must have been legally bound through the making of reciprocal promises." *Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d at 7-8 and n. 12 ("Massachusetts … requires mutuality of obligation as a prerequisite to the formation of a binding contract").

In this case, BK Bridge's' consideration is illusory. The Agreement provides in pertinent part:

> Emergency Delay or Cancellation: I acknowledge that BK Bridge Events LLC **at its sole discretion** may **delay**, **modify**, or **cancel** the Mudderella event if **conditions** or natural or manmade emergencies make **administering** the event **unreasonably difficult** or unsafe. I agree that "emergency" is defined to mean any event beyond the control of BK Bridge Events LLC, including but not limited to: high wind, extreme rain or hail, hurricane, tornado, earthquake, flood, acts of terrorism, fire, threatened or actual strike, labor difficulty or work stoppage, insurrection, war, public disaster, and unavoidable casualty. **In the event of a delay, modification, or cancellation of the Mudderella event as described in this paragraph, I understand that I will not be entitled to a refund of my entry fee or any other costs incurred in connection with the Mudderella event.**

> Fee Refunds: I understand that all fees and associated costs (including optional product purchases, spectator tickets, and donations), paid in registration for this Mudderella event are not refundable **for any reason under any circumstances**, including but not limited to injury, a scheduling conflict, and/or event cancellation.

(Emphasis supplied.) (A. 188-189)

In reality, BK Bridge promised nothing to the Consumers. The consideration was illusory. Under the "Emergency Delay or Cancellation" provision, BK Bridge could at its "sole discretion" hold the event in Haverhill as promoted, or delay (for an unlimited period), modify or cancel it if some undefined "conditions" somehow made "administering" the event "unreasonably difficult." Here, "conditions" could be anything. Putting aside the aforementioned provision, under the "Fee Refunds" provision, BK Bridge could keep Consumers' money "for any reason under any circumstances," even willful non-performance. The bottom line: BK Bridge did not commit itself to anything. All it said to the Consumers was in effect: "We promise to hold an event if we feel like it, but will keep your money no matter what."

Also, BK Bridge did not act honestly and in good faith. Under these circumstances there can be no finding of good consideration. *See Price v. Price*, 348 Mass. 663, 204 N.E. 2d 902, 905 (1965), *cert. den.* 382 U.S. 820 (1965); *Vasconcellos v. Arbella Mutual Insurance Company*, 67 Mass. App. Ct. 277, 282, 853 N.E. 2d 571, 576 (2006).

## 2.  **No Contract Was Formed Because Of Indefiniteness**

Defendants-Appellees argued below: "Notably, the Agreement itself promises only to hold a Mudderella event, and specifies neither a date or location." (A. 350) Implicit in this argument is that it was immaterial when Mudderella Boston 2014 was held or whether Mudderella Boston 2014 was held in Haverhill, Massachusetts

16

or 79 miles away in Westbrook, Maine or 1,517 miles away (via Interstate 90 west) in Westbrook, Minnesota. [7]

If the terms of a contract are not definite, the contract will be void as it indicates that there was no intent to contract. A contract must be definite as to the material terms. *JPMorgan Chase & Company, Inc. v. Cassarano*, 81 Mass. App. Ct. at 354-355, 963 N.E. 2d at 110-111. Under Massachusetts law a term is material when it involves "an essential and inducing feature" of the contract. *Backman v. Smirnov*, 751 F. Supp. 2d 304, 311 (D. Mass. 2010).

Here, by Defendants-Appellees' own admission, two essential terms were missing--location and date. No legally binding contract was formed. *See Rosenfield v. U. S. Trust Co.*, 290 Mass. 210, 217, 195 N.E. 323, 326 (1935).

3. **No Contract Was Formed Because There Was No Meeting of the Minds**

The parties never had a meeting of the minds as to where or when Mudderella Boston 2014 would be held. Thus, no contract was ever formed.

To form a binding contract, it is black letter Massachusetts contract law that there must be a meeting of the minds. *See Adelson v. Hananel*, 641 F. Supp. 2d 65, 83 (D. Mass. 2009) *aff'd,* 652 F.3d 75 (1st Cir. 2011). The Consumers understood that Mudderella Boston 2014 would be held on September 6, 2014 in Haverhill, as promoted. BK Bridge claims that it understood that Mudderella Boston 2014 could

---

[7] Source: Google.

be held at any time in any location. (A. 350) An intention or understanding must be mutual to create a legal obligation. *See Lonnqvist v. Lammi*, 240 Mass. 371,373-374; 134 N.E. 255, 256-257 (1922). There was no mutual understanding here.

### 4. No Contract Was Formed Because BK Bridge Failed To Perform A Condition Precedent and/or Impossibility Existed

"Contract conditions precedent generally are of two kinds. The first involves issues of offer and acceptance which precede and determine the formation of a contract." *City of Haverhill v. George Brox, Inc.*, 716 N.E. 2d 138, 141 (1999) (citations omitted). Where there is a failure to comply with or to perform such a condition precedent, a contract does not become a binding obligation. *See Tilo Roofing Co. v. Pellerin*, 331 Mass. 743, 746, 122 N.E. 2d 460, 462 (1954). *Accord, Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 420-421, 837 N.E. 2d 1121 (2005). A condition precedent to a written instrument need not be expressed. *See Rizika v. Donovan*, 45 Mass. App. Ct. 159, 164, 695 N.E. 2d 1097, 1101 (1998). A court may infer the existence of the condition from the surrounding facts and circumstances of the contract. *See Id.* at 164, 695 N.E. 2d at 1101. Parol evidence is admissible. *See Tilo Roofing Co.*, 331 Mass. at 746, 122 N.E. 2d at 462. If such condition precedent is shown not to have been performed, the writing does not become a binding obligation. *See Id.* Here, the ability to hold Mudderella Boston 2014 in Haverhill was a condition precedent that was not met. Hence, no contract was formed between the Consumers and BK Bridge. This case is

on all fours with *Boston Plate & Window Glass Co. v. John Bowen Co.*, 335 Mass. 697, 141 N.E. 2d 715 (1957).

5. **No Contract Was Formed Because of Mutual Mistake**

The parties were mutually mistaken that Mudderella Boston would be held in Haverhill, Massachusetts. "Where there is a mutual mistake between parties as to the subject matter of the contract… there is no meeting of the minds…." *Shawmut – Canton LLC v. Great Spring Waters of America, Inc.*, 62 Mass. App. Ct. 330, 816 N.E. 2d 545 (2004). In the instant case, Consumers and BK Bridge mistakenly understood that Mudderella Boston 2014 would be held in Haverhill, Massachusetts.

**B. There Was No Meeting of The Minds Concerning the Arbitration Clause**

For an enforceable arbitration clause (like any other contract) there must be mutual assent. Thus a party seeking to enforce an arbitration clause must prove not only the existence of a contract, but also its precise terms. Furthermore, obscure or complex language in a consumer contract that fails to adequately disclose terms and conditions should preclude a finding of assent by a consumer. A consumer contract should be written in plain language that an average consumer can understand. "Reasonably conspicuous notice of the existence of contract terms … [is] essential if electronic bargaining is to have integrity and credibility." *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574-575, 987 N.E.2d 604, 612 (2013); 940 C.M.R. 3.01 ("Clear and Conspicuous Disclosure…. [D]isclosures … shall be of such size or

color contrast and so placed as to be readily noticeable to purchasers or prospective purchasers…. A term is conspicuous when it is so written that a person against whom it is to operate ought to have noticed it. Language in the body of a form is 'conspicuous' if it is in larger or contrasting type or color."). *See also Berkson v. Gogo LLC*, No. 14-CV-1199, 2015 WL 1600755, at \*13 (E.D.N.Y. Apr. 9, 2015), where the court stated:

> It is not unreasonable to assume that that there is a difference between paper and electronic contracting. Based on assumptions about internet consumers, they require clearer notice than do traditional retail buyers. In the absence of contrary proof, it can be assumed that the burden should be on the offeror to impress upon the offeree—i.e., the average internet user—the importance of the details of the binding contract being entered into.

In this case, the Arbitration Clause is hidden in the Agreement and contains convoluted language. It states in part: "**In the event of a legal issue, I agree to engage in good faith efforts to mediate any dispute that might arise. Any agreement reached will be formalized by a written contractual agreement at that time**." (emphasis supplied). (A. 187) The Arbitration Clause does not define what a legal issue is, nor does not specify the identity of the arbitration forum or the governing arbitration rules. The AAA has multiple classes of arbitration, each with its own set of rules. For example, BK Bridge could have drafted the Arbitration Clause to read: "Any dispute … shall be finally resolved by arbitration administered by the American Arbitration Association under its Consumer Arbitration Rules

(which appear in full below)," but it did not.

*Atalese v. U.S. Legal Services Group, L.P.*, 219 N.J. 430, 99 A. 3d 306 (2014), *cert. den*. 135 S. Ct. 2804 (2015) is relevant here. In *Atalese*, the New Jersey Supreme Court refused to compel arbitration, ruling that the absence of any language in the arbitration provision that the plaintiff was waiving her statutory right to seek relief in a court of law rendered the provision unenforceable. *Id*. at 436, 99 A. 3d at 309. *See also Guidotti v. Legal Helpers Debt Resolution*, 2014 WL 6863183, *1 (D.N.J. December 3, 2014) (holding that an arbitration provision contained in an agreement to provide debt-adjustment services was unenforceable because it failed to advise the plaintiff of the provision's effect and significance, "namely, that it bars [plaintiff] from seeking court relief").

Here, the Arbitration Clause is silent as to waiver of the right to seek relief in court. (A. 187) Elsewhere, the Agreement fails to clearly and explicitly warn the Consumers that arbitration is a waiver of the right to sue in a judicial forum. The Consumers believe that Massachusetts would adopt *Atalese* if and when directly presented with the opportunity. *Cf. Burten v. Milton Bradley Co*., 763 F.2d 461, 465 (1st Cir. 1985) (language of negligence disclaimer must be clear and unambiguous).

Moreover, the "Venue and Jurisdiction" and "Class Action" provisions refer to a "legal action," which is blatantly inconsistent with mandatory arbitration. *Narayan v. The Ritz-Carlton Dev. Co.*, Inc., 135 Haw. 327, 334, 350 P.3d 995, 1002

(2015) ("where a contract contains one or more dispute resolution clauses that conflict, we have resolved the ambiguity against the contract drafter and held that the parties lacked the unambiguous intent to arbitrate"). The result was no meeting of the minds.

## C. <u>The Arbitration Clause Lacks Consideration</u>

For the Arbitration Clause (as opposed to the Agreement) to be enforceable, consideration is required. When both parties waive the right to judicial process and agree to arbitrate, this reciprocal exchange of benefit and detriment constitutes consideration. *See Miller v. Cotter*, 448 Mass. 671, 684 n.16; 863 N.E. 2d. 537, 547 n. 16 (2007). In this matter, only the Consumers allegedly agreed to arbitrate. BK Bridge agreed to nothing. See the Arbitration Clause, as well as that of the Class Actions clause. (A. 187)

In *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 610 (2013), the Fourth Circuit stated in a putative class action alleging a seller's failure to return deposits to buyers:

> We agree with the district court that the [arbitration] provision binds only Plaintiffs to arbitration, and thus lacks mutuality of consideration….[A]ll the subject and verb pairings relate to the buyer's obligations (i.e., buyer agrees, buyer waives, etc.); nowhere does the provision state that 'Buyer and Seller agree,' or the passive 'it is agreed.'

*Cf. Soto v. State Industrial Products, Inc.*, 642 F.3d 67, 76-77 (1st Cir. 2011) (applying Puerto Rico law). In the instant case, the Arbitration Clause fails for lack

of consideration under Massachusetts law.

**D.** **The Consumers' Claims Do Not Fall Within The Scope of the Arbitration Clause**

The narrowly worded Arbitration Clause provides in pertinent part, "I agree that all disputes, controversies, or claims **arising out of my participation in the Mudderella event** shall be submitted to binding arbitration…." (emphasis supplied). (A. 187) Elsewhere the Agreement confirms that only personal injury arising out of "participation" (physical activity) in the obstacle course and property damage claims are to be arbitrated. (A. 186)

This case however, involves consumer rights in connection with registering for the event, not physical participation in the event. This Court has made clear that the choice of words in a contract matters. *See Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Company*, 986 F. 2d 607, 609 (1st Cir. 1993). BK Bridge could have worded the Arbitration Clause as follows: "Any dispute arising out of or relating to this agreement, or the formation or breach thereof, shall be finally resolved by arbitration…." However, BK Bridge did not write that provision into the Arbitration Clause and the District Court erred in deciding the matter as if it did. *Cf. Cutler Associates, Inc. v. Palace Constr.,* LLC, 2015 WL 5569987, at *6 (D. Mass. Sept. 22, 2015), *citing PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) (noting that a broad arbitration provision should clearly provide that "all claims and disputes between the parties on any matter

23

relating to" the contract at issue would be resolved by arbitration).

The presumption in favor of arbitrability[8] does not apply here because the Arbitration Clause is not ambiguous about whether it covers the consumer protection dispute at hand. It does not. *See Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d at 381.

Even if the District Court had determined the Arbitration Clause to be ambiguous, the Consumers were not allowed to produce evidence to rebut the presumption. *See* Fed. R. Evid. 301. At a minimum, the District Court was required to permit discovery by the Consumers and conduct a jury trial to resolve any ambiguity.

E. **The Arbitration Clause Is Unconscionable**

The Arbitration Clause is unconscionable, both procedurally and substantively, and should not be enforced. As noted further below, in *Sengupta v. Tough Mudder LLC*, Circuit Court of Marshall County, West Virginia, No. 14-C-66-H (January 9, 2015), the court held as a matter of West Virginia law that the Arbitration Clause is procedurally and substantively unconscionable. Order at 11-12. The court stated the Arbitration Clause "is a 'bad' adhesion contract containing harsh provisions…" *Id.* at 14.[9]

---

[8] As previously indicated the Consumers challenge that there still exists a strong federal policy favoring non-business forced arbitration.

[9] The District Court did not mention *Sengupta* in its Memorandum and Order.

In *Miller v. Cotter*, 448 Mass. 671, 679-680, 863 N.E. 2d 537, 545 (2007) and

*Machado v. System4 LLC*, 471 Mass. 204, 218, 28 N.E. 3d 401, 414 (2015), *citing*

*Storie v. Household Int'l, Inc.*, U.S. Dist. Ct., No. 03-40268 (D. Mass. Sept. 22,

2005), the Supreme Judicial Court discussed the Massachusetts law of

unconscionability. Here, the Arbitration Clause is unconscionable because "the sum

total of its provisions drives too hard a bargain for a court of conscience to assist."

*Miller v. Cotter*, 448 Mass. at 679, 863 N.E. 2d 537.

1. **The Arbitration Clause Is Procedurally Unconscionable**

The Arbitration Clause was not the product of negotiation and is a contract of

adhesion. *See Miller v. Cotter*, 448 Mass. at 684 n.16, 863 N.E. 2d at 547 n. 16;

*Chase Commercial Corp. v. Owen*, 32 Mass. App. Ct. 248, 253, 588 N.E. 2d 705,

709 (1992). The Arbitration Clause is oppressive due to the grossly unequal

bargaining power of the parties. *See Id.* at 254. A contract of adhesion is construed

strictly against the drafter. *See Id.* at 253. The clause entitled "Venue and

Jurisdiction" is unintelligible. *See Sengupta v. Tough Mudder LLC* at 14-16. The

element of surprise is also present. The Arbitration Clause was not conspicuous, but

instead was obscurely embedded deep in the Agreement so as not to be clear and

conspicuous in appearance and location. *See AT&T Mobility LLC v. Concepcion*,

131 S. Ct. 1745, 1750 n.6 (2011) ("Of course States remain free to take steps

addressing the concerns that attend contracts of adhesion—for example, requiring

class-action-waiver provisions in adhesive arbitration agreements to be highlighted.") *See also Sengupta v. Tough Mudder LLC* at 16-19; *Skirchak v. Dynamics Research Corp.*, 508 F. 3d 49, 60 (1st Cir. 2007), citing *Miller v. Cotter; Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. at 574-575, 987 N.E. 2d at 612; 940 C.M.R. 3.01. The Arbitration Clause does not designate the applicable arbitration forum or the applicable rules. The Consumers request the Court to take judicial notice that the AAA has multiple classes of arbitration, each with its own set of rules. *See Brown v. MHN Government Services, Inc.*, 306 P.3d 948, 954 (2013) (arbitration agreement was procedurally unconscionable where it contained procedural surprise due to its lack of clarity regarding which set of AAA rules would govern the arbitration). The Consumers are subjected to unfair surprise as to which substantive law applies. Similarly, the Arbitration Clause states that "the cost" of the arbitration shall be shared equally by the parties, but the term "cost" is not defined. Does "cost" cover filing fees, attorneys' fees, the arbitrator(s)' fees, expenses, or all or only some of these? The Arbitration Clause contains unclear terms and does not provide reasonable notice.

2. **The Arbitration Clause Is Substantively Unconscionable**

As for substantive unconscionability, the Arbitration Clause is unduly harsh and by its terms is not mutual as it applies only to the Consumers. This one-sidedness, in addition to constituting a lack of consideration, is unconscionable. *See*

*Miller v. Cotter*, 448 Mass. at 680 and 684 n.16, 863 N.E. 2d at 545 and 547 n. 16. *See also Sengupta v. Tough Mudder LLC* at 20-22.

Moreover, the provision stating that the "cost of such action shall be shared equally by the parties" is unconscionable. *See McInnes v. LPL Financial, LLC*, 466 Mass. 256, 266, 944 N.E. 2d 790, 798 (2013) (discussing unconscionable prospective waiver of statutory remedies). For example, if the Consumers were to prevail under G.L. c. 93A, they would have to share the "cost" of the action equally, forfeiting filing fees, expert fees, attorneys' fees, the arbitrator(s)' fees and expenses, even though the recovery of attorneys' fees and costs is mandatory. G.L. c. 93A, §9(4); *Linthicum v. Archambault*, 379 Mass. 381, 398 N.E. 2d 482 (1979). Such a limitation on costs violates G.L. c. 93, §101. *See also Spence v. Reeder*, 382 Mass. 398, 413, 416 N.E. 2d 914, 924 (1981) ("courts have long refused to give effect to purported waivers of statutory rights….").

Even more unconscionable is the Indemnification clause. (A. 186) The Consumers did not initial this clause. (A. 186) Under the Indemnification clause, beyond waiving their right to statutory "costs," the Consumers are claimed to have waived their right to **any** recovery at all. *See Sengupta v. Tough Mudder LLC* at 24.

Finally, according to BK Bridge, "[t]he average registration fee paid by registrants for the September 6, 2014 Mudderella event was $89.44." (A. 229) The arbitration filing and administrative fees in an $89.44 case make arbitration illusory,

depending on the applicable rules. *See McInnes v. LPL Financial, LLC*, 466 Mass. at 266, 994 N.E. 2d at 799 *citing American Express Co., v. Italian Colors Restaurant* ___U.S.__ 133 S. Ct. 2304, 2310-2311 (2013).

### 3. <u>The Arbitration Clause (Including The Class Action Waiver) Should Not Be Enforced Or Re-Written</u>

Because the entire Arbitration Clause (including the class action waiver) constitutes overreaching by an unscrupulous defendant and is infected with procedural and substantive unconscionability (oppression, surprise, harshness, one-sidedness), this Court should decline to enforce or re-write it. *Cf. Machado v. System4 LLC,* 471 Mass. at 220, 28 N.E. 2d at 415 (unconscionability did not "pervade[e] the arbitration agreement"). *See also Kristian v. Comcast Corp.*, 446 F.3d 25, 62 (1st Cir. 2006) (noting that courts typically prefer declaring an arbitration agreement unenforceable rather than using severance as a remedy when fundamental elements of the arbitration agreement are at issue); *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197 (2013) (invalidating arbitration clause); *Brewer v. Missouri Title Loans*, 364 S.W. 3d 486 (2012) (en banc), *cert. den.* (2012) (affirming finding that class arbitration waiver was unconscionable because the entire arbitration agreement was unconscionable).

In *Lou v. MA Labs, Inc.*, 2013 WL 2156316 (N.D. Cal. May 17, 2013), an employee required to sign an employment contract with an arbitration agreement brought wage claims. The court denied the defendant's motion to compel arbitration

finding the arbitration agreement was procedurally unconscionable because it was adhesive and contained confusing language and conflicting rules. Additionally, the court found the agreement was substantively unconscionable because it lacked mutuality and contained an ambiguous fee-shifting provision. Under California law, the court refused to enforce the arbitration agreement, stating: "Severing bad arbitration clauses allows employers and other drafters to draft one-sided agreements and then negotiate down to the least-offensive agreement if faced with litigation; rather, employers should draft fair agreements initially." *Id.* at \*6.

Although the Agreement here contains a severability clause, it is not dispositive under Massachusetts law of whether severance is a proper remedy. *See Machado v. System4 LLC*, 465 Mass. 508, 517, 989 N.E. 2d 464, 472 (2013); *Feeney*, 454 Mass. at 210, 908 N.E. 2d at 769. Indeed, with respect to the lack of bilateralism in the Arbitration Clause, severance is not even possible. There is no language in the Arbitration Clause that could be severed to make it bilateral. Rather, this Court would have to re-write the Arbitration Clause to state that both parties are required to arbitrate their claims. The power to sever does not include the power to add terms. *See Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 857, 113 Cal. Rptr. 2d 376 (2001). Further, severance is also not an option concerning what is the applicable arbitration forum or what rules would govern arbitration. *See Brown v. MHN Government Services, Inc.*, 306 P.3d at 954-958 (holding that because the

arbitration agreement was permeated with unconscionability, it was unenforceable and the unconscionable taint could not be removed through severance, noting that "one of the agreement's greatest defects--which set of AAA rules governs—cannot be cured by severance alone").

In the world of consumer affairs, the Arbitration Clause buried in the Agreement is a "skunk" -- it "stinks" to high heaven.  The Arbitration Clause here is a far cry from what the Supreme Court described as a consumer-friendly arbitration provision in *Concepcion*. 563 U.S at 333.

## CONCLUSION

The District Court's Orders denying the Consumers' Motion To Remand and Motion For Discovery should be reversed and the case remanded to Massachusetts State Court. In the alternative, the case should be remanded to the District Court for further proceedings.

The District Court's Order dismissing this case and compelling mediation and arbitration should be reversed and the case remanded to the District Court for further proceedings.

## REQUEST FOR ATTORNEYS FEES AND COSTS

To the extent required at this time, the Consumers request an award of attorneys' fees and costs under M.G.L. c. 93A.

Respectfully submitted,
Lisa C. Pazol, Maria C. Newman, Lisa Russ,
and Audrey J. Bennett, on behalf of
themselves and others similarly situated,
By their Attorneys,


/s/ Barry M. Altman, Esq.
Barry M. Altman, Esq.  BBO #016710
ALTMAN & ALTMAN
404 Main Street, Suite 3
Wilmington, MA 01887
(978) 658-3388
altmanlaw2@gmail.com

/s/ James L. O'Connor, Jr., Esq.
James L. O'Connor, Jr., Esq. BBO #563450
James M. Galliher, Esq. BBO #561394
C. Deborah Phillips, Esq. BBO #398270
NICKLESS, PHILLIPS and O'CONNOR
625 Main Street
Fitchburg, MA 01420
978-342-4590
joconnor@NPOlegal.com
jgalliher@NPOlegal.com
dphillips@NPOlegal.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   [X] this brief contains 7,282 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

   [ ] this brief uses a monospaced typeface and contains <state the number of> lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [X] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman, *or*

   [ ] this brief has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

<u>/s/ James L. O'Connor, Jr.</u>
Attorney for Appellants
Dated: November 6, 2015

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 10, 2015, I served a copy of the foregoing via ECF on the following:

Michael J. Tuteur, Esq.
Jaclyn V. Piltch, Esq.
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199

Dated:  November 6, 2015

/s/ James L. O'Connor, Jr.
James L. O'Connor, Jr. BBO#563450

# ADDENDUM
## TABLE OF CONTENTS

1.  April 22, 2015 Memorandum and Order on Defendants' Motion to

    Dismiss and Compel Mediation and Arbitration                          1

2.  April 22, 2015 Order of Dismissal                                     5

3.  April 22, 2015 Electronic Order denying Motion to Remand              6

4.  April 22, 2015 Electronic Order denying as moot Motion for Discovery  7

5.  September 14, 2015 Judgment in No. 15-8012                            8

6.  Participant Assumption of Risk, Waiver of Liability, and Indemnity

    Agreement                                                            10

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LISA C. PAZOL, MARIA C. NEWMAN, LISA RUSS, and AUDREY J. BENNETT, on behalf of themselves and others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>TOUGH MUDDER INCORPORATED, TOUGH MUDDER, LLC, and BK BRIDGE EVENTS, LLC, )<br><br>Defendants. ) | CIVIL ACTION<br><br>NO. 14-40180-TSH |

## <u>MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND COMPEL MEDIATION AND ARBITRATION (Docket No. 14)</u>

### April 22, 2015

**HILLMAN, D.J.**

Plaintiffs Lisa Pazol, Maria Newman, Lisa Russ, and Audrey Bennett ("Plaintiffs") bring this class action against Defendants Tough Mudder Incorporated, Tough Mudder, LLC, and BK Bridge Events, LLC ("Tough Mudder"). Plaintiffs registered and paid to participate in Tough Mudder's Boston-area "Mudderella" obstacle course event, scheduled to take place on September 6, 2014 in Haverhill, Massachusetts. Just days before the event, Tough Mudder moved the location to Westbrook, Maine. Plaintiffs were unable to attend, and Tough Mudder refused to refund their registration fees. Plaintiffs allege damages as a result of the event's relocation, on behalf of themselves and a class of similarly situated persons.[1] For the foregoing reasons, Defendants' Motion to Dismiss and Compel Mediation and Arbitration is ***granted***.

---

[1] The First Amended Complaint asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A.

1

## **Background**

When registering for the Mudderella Boston event on the Tough Mudder website, each of

the Plaintiffs agreed to the Participant Assumption of Risk, Waiver of Liability, and

Indemnification Agreement ("Participant Agreement").[2] *See* Barclay Aff., Docket No. 16, Ex. 1.

The Participant Agreement was presented to registrants in three separate scroll windows on the

registration webpage. Barclay Aff. at ¶ 1. Each registrant agreed to the terms of the Participant

Agreement by checking a box next to each scroll window. *Id.* Included in the Participant

Agreement is the following mediation and arbitration clause:

> Mediation and Arbitration: In the event of a legal issue, I agree to engage in good faith
> efforts to mediate any dispute that might arise. Any agreement reached will be formalized
> by a written contractual agreement at that time. Should the issue not be resolved by
> mediation, I agree that all disputes, controversies, or claims arising out of my
> participation in the Mudderella event shall be submitted to binding arbitration in
> accordance with the applicable rules of the American Arbitration Association then in
> effect. The cost of such action shall be shared equally by the parties.

*See* Barclay Aff., Docket No. 16, Ex. 1, at 5. The Participant Agreement also includes a

waiver of class action claims:

> Class Actions: I agree that any arbitration, mediation, or legal action shall proceed solely
> on an individual basis without the right for any claims to be arbitrated on a class action
> basis or on bases involving claims brought in a purported representative capacity on
> behalf of others. Claims may not be joined or consolidated unless agreed to in writing by
> all parties.

*Id.* On the basis of these contract terms, Defendants request an order dismissing

Plaintiffs' claims and compelling mediation and arbitration on an individual basis.

---

[2] With the affidavits of Lucas Barclay (Docket Nos. 16 & 37) and Darah Wolf (Docket No. 38), Defendants have
sufficiently authenticated a copy of the Participant Agreement (Docket No. 16, Ex. 1), and screen shots of Plaintiffs'
registration confirmation webpages (Docket No. 16, Ex. 2-5). Therefore, the Court finds that the Participant
Agreement submitted by Defendants governs this dispute, and denies Plaintiff's Motion to Strike the Affidavit of
Lucas Barclay (Docket No. 33).

## Analysis

The Federal Arbitration Act ("FAA") requires courts to enforce agreements to arbitrate contract disputes, even where the agreement requires claims to be arbitrated individually.[3] *See AT&T Mobility, LLC v. Concepcion*, -- U.S. --, 131 S.Ct. 1740 (2011) (holding that the FAA preempts a state judicial rule prohibiting class arbitration waivers in consumer contracts). Class arbitration waivers are enforceable even where the cost of individual arbitration effectively prevents the pursuit of low-value claims. *See Am. Express Co. v. Italian Colors Rest.*, -- U.S. --, 133 S.Ct. 2304 (2013); *see also Feeney v. Dell Inc.*, 466 Mass. 1001, 1003, 993 N.E.2d 329 (2013). The fact that Plaintiffs assert a claim under M.G.L. c. 93A does not obviate the arbitration clause. *See McInnes v. LPL Financial, LLC*, 466 Mass. 256, 257, 994 N.E.2d 790 (2013). Further, courts routinely uphold agreements to mediate in good faith as a condition precedent to arbitration or litigation. *See, e.g., HIM Portland, LLC v. Devito Builders, Inc.*, 317 F.3d 41, 43-44 (1st Cir. 2003).

No grounds exist at law or equity that would invalidate the agreement under § 2 of the FAA. The Court rejects Plaintiff's contention that the mediation, arbitration and class waiver terms are unconscionable.[4] Although the Participant Agreement may be a contract of adhesion, that fact alone does not make the terms at issue unenforceable. *See Miller v. Cotter*, 448 Mass. 671, 684 n.16, 863 N.E.2d 537 (2007). Nor does the fact that Plaintiffs clicked an online

---

[3] Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

[4] Plaintiffs also assert several contract formation defenses, including mutual mistake, lack of consideration, and failure to perform a condition precedent. The Court rejects these perfunctory arguments for the reasons set forth in Defendant's Reply Memorandum, Docket No. 36, at 8-10.

checkbox to indicate their assent affect the analysis. Such "clickwrap" agreements are commonly

enforced in Massachusetts and Federal Courts. *See, e.g.*, *Ajemian v. Yahoo!*, 83 Mass. App. Ct.

565, 576, 987 N.E.2d 604 (2013) (collecting cases); *Bagg v. HighBeam Research, Inc.*, 862 F.

Supp. 2d 41, 45 (D. Mass. 2012). By registering for Mudderella Boston, Plaintiffs proactively

signed up for a voluntary event. The Participant Agreement conspicuously states at the outset

that it "WILL ELIMINATE [the participant's] ABILITY TO BRING FUTURE LEGAL

ACTIONS." *See* Barclay Aff., Docket No. 16, Ex. 1, at 1 (all caps in original). Further, the

Participant Agreement did not require Plaintiffs to waive all statutory and common law remedies,

and the arbitrator may still award compensatory damages, attorney's fees, and multiple damages

on the 93A claim. *See McInnes*, 466 Mass. at 266-67. Therefore, the Court finds that the

Participant Agreement's mediation, arbitration, and class waiver terms are valid and enforceable.

## ORDER

For the foregoing reasons, Defendant's Motion to Dismiss and Compel Mediation and

Arbitration (Docket No. 14) is ***granted***. Pursuant to 9 U.S.C. § 4, Plaintiffs ***are hereby ordered*** to

mediate and arbitrate their cases individually, as provided for in the Participant Agreement, if

they wish to pursue these claims. This case is dismissed.


SO ORDERED.


/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Pazol, et al.,
      Plaintiff,

    V.

Tough Mudder Inc.,
      Defendant,

**CIVIL ACTION**

**NO. 14-40180-TSH**

## ORDER OF DISMISSAL

**Hillman,  D. J.**

    In accordance with the Court's Memorandum and Order dated 4/22/15, granting the defendants' motion to dismiss, it is hereby ORDERED that the above-entitled action be and hereby is dismissed.

        By the Court,

    __4/22/15__
    **Date**

        __/s/ Martin Castles__
        **Deputy Clerk**

**From:** ECFnotice@mad.uscourts.gov [mailto:ECFnotice@mad.uscourts.gov]
**Sent:** Wednesday, April 22, 2015 4:38 PM
**To:** CourtCopy@mad.uscourts.gov
**Subject:** Activity in Case 4:14-cv-40180-TSH Pazol et al v. Tough Mudder Incorporated et al Order on Motion to Remand

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**United States District Court**
**District of Massachusetts**

**Notice of Electronic Filing**

The following transaction was entered on 4/22/2015 at 4:38 PM EDT and filed on 4/22/2015
**Case Name:** Pazol et al v. Tough Mudder Incorporated et al
**Case Number:** 4:14-cv-40180-TSH
**Filer:**
**Document Number:** 47(No document attached)

**Docket Text:**
**District Judge Timothy S Hillman: ELECTRONIC ORDER entered denying [7] Motion to Remand. Defendants having shown a reasonable probability that the amount in controversy in this case exceeds $5 million, Plaintiffs' Motion to Remand (Docket No. 7) is denied. (Castles, Martin)**

**4:14-cv-40180-TSH Notice has been electronically mailed to:**

Barry M. Altman    altmanlaw2@gmail.com

C. Deborah Phillips    dphillips.nandp@verizon.net

Michael J. Tuteur    mtuteur@foley.com, lmbrown@foley.com

James L. O'Connor, Jr    joconnor.nandp@verizon.net

James M. Galliher    jgalliher.nandp@verizon.net

Jaclyn V. Piltch    jpiltch@foley.com, ksacco@foley.com, scolon@foley.com

**4:14-cv-40180-TSH Notice will not be electronically mailed to:**

A - 6

**From:** ECFnotice@mad.uscourts.gov [mailto:ECFnotice@mad.uscourts.gov]
**Sent:** Wednesday, April 22, 2015 4:39 PM
**To:** CourtCopy@mad.uscourts.gov
**Subject:** Activity in Case 4:14-cv-40180-TSH Pazol et al v. Tough Mudder Incorporated et al Order on Motion for Discovery

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**United States District Court**
**District of Massachusetts**

## Notice of Electronic Filing

The following transaction was entered on 4/22/2015 at 4:39 PM EDT and filed on 4/22/2015
**Case Name:**       Pazol et al v. Tough Mudder Incorporated et al
**Case Number:**     4:14-cv-40180-TSH
**Filer:**
**Document Number:** 48(No document attached)

**Docket Text:**
**District Judge Timothy S Hillman: ELECTRONIC ORDER entered denying as moot [8] Motion for Discovery. (Castles, Martin)**

**4:14-cv-40180-TSH Notice has been electronically mailed to:**

Barry M. Altman     altmanlaw2@gmail.com

C. Deborah Phillips     dphillips.nandp@verizon.net

Michael J. Tuteur     mtuteur@foley.com, lmbrown@foley.com

James L. O'Connor, Jr     joconnor.nandp@verizon.net

James M. Galliher     jgalliher.nandp@verizon.net

Jaclyn V. Piltch     jpiltch@foley.com, ksacco@foley.com, scolon@foley.com

**4:14-cv-40180-TSH Notice will not be electronically mailed to:**

# United States Court of Appeals
## For the First Circuit

No. 15-8012

LISA C. PAZOL; MARIA C. NEWMAN; LISA RUSS; AUDREY J. BENNETT,

Petitioners,

v.

TOUGH MUDDER INCORPORATED; TOUGH MUDDER, LLC; BK BRIDGE EVENTS, LLC,

Respondents.

Before

Torruella, Lynch and Kayatta,
<u>Circuit Judges</u>.

**JUDGMENT**

Entered: September 14, 2015

The petition for permission to appeal pursuant to 28 U.S.C. § 1453(c) is denied. This denial is without prejudice to full consideration by this court in appeal no. 15-1640 of the removal issue, should the appellants choose to raise a challenge in that proceeding to the district court's denial of their motion to remand. <u>See</u> 15A Fed. Prac. & Proc. Juris. § 3905.1 (2d ed.) (once final judgment has entered and an appeal has been taken, earlier rulings by district court are also subject to review).

<u>Petition denied.</u>

By the Court:

/s/ Margaret Carter, Clerk

A - 8

cc:
C. Deborah Phillips
Barry Michael Altman
James M. Galliher
James L. O'Connor Jr.
Michael J. Tuteur
Jaclyn Vale Piltch

1. Participant Waiver - Click Below to Agree
WAIVER

BK Bridge Events LLC
PARTICIPANT ASSUMPTION OF RISK, WAIVER OF LIABILITY,
 AND INDEMNITY AGREEMENT

PARTICIPANTS:  READ THIS DOCUMENT CAREFULLY BEFORE SIGNING. THIS
DOCUMENT HAS LEGAL CONSEQUENCES AND WILL AFFECT YOUR LEGAL
RIGHTS AND WILL ELIMINATE YOUR ABILITY TO BRING FUTURE LEGAL
ACTIONS.

NOTE TO MINORS: If you are under the age of 18, you may only attend the Mudderella Event
accompanied by an adult.  You also acknowledge that your parent or guardian has reviewed,
understood and agreed to the terms below.

NOTE TO PARENTS/GUARDIANS OF MINORS: You acknowledge that you have reviewed,
understood and agreed to the terms below (such terms being interpreted as if they applied to both
you and your minor child/ward) and have the legal authority to enter into this Agreement on
behalf of your minor child/ward.

Parties
Released Parties include BK BRIDGE EVENTS LLC and its directors, officers, employees,
agents, contractors, insurers, spectators, co-participants, equipment suppliers, and volunteers;
[VENUE] and its directors, officers, employees, agents, contractors, insurers, equipment
suppliers, and volunteers; all BK BRIDGE EVENTS LLC event sponsors, organizers, promoters,
directors, officials, property owners, and advertisers; governmental bodies and/or municipal
agencies whose property and/or personnel are used; and any or all parent, subsidiary or affiliate
companies, licensees, officers, directors, partners, board members, supervisors, insurers, agents,
equipment suppliers, and representatives of any of the foregoing.

Releasing Parties include: the participant (and/or my participating minor child/ward) as well as
participant's (and/or my participating minor child/ward's)   spouse, children, parents, guardians,
heirs, next of kin, and any legal or personal representatives, executors, administrators, successors
and assigns, or anyone else who might claim or sue on participant's (and/or my participating
minor child/ward's) behalf.

Assumption of Inherent Risks:
The Mudderella event (hereafter referred to as the Mudderella event) is meant to be a test of
toughness, strength, stamina, camaraderie, and mental grit that takes place in one place in one
day. It is not a race against other contestants, but rather a competition between oneself and the
course. The object is to complete the course. Venues are part of the challenge and usually
involve hostile environments that might include extreme heat or cold, snow, fire, mud, extreme
changes in elevation, and water. Some of the activities include runs, military style obstacles,
going through pipes, traversing cargo nets, climbing walls, encountering electric voltage,
swimming in cold water, throwing or carrying or getting hit with heavy objects, and traversing

muddy areas. In summation, the Mudderella event is a hazardous activity that presents the ultimate physical and mental challenge to participants.

I acknowledge that the Mudderella event is an extreme test of my physical and mental limits that carries with it inherent risks of physical injury. Inherent risks are risks that cannot be eliminated completely (without changing the challenging nature of the Mudderella event) regardless of the care and precautions taken by BK Bridge Events LLC (hereafter used when referring to the corporate entity and protected parties). I also understand that it is extremely strenuous with the accompanying risks and dangers generally present in such activities. I understand that these hazards may be magnified due to the fact that the Mudderella event is often conducted under what may be extreme conditions and circumstances.

I understand and acknowledge that the inherent risks include, but are not limited to: 1) contact or collision with persons or objects (e.g., collision with spectators or course personnel), contact with other participants, contact or collision with motor vehicles or machinery, and contact with natural or man-made fixed objects or obstacles; 2) encounter with obstacles (e.g., natural and man-made water, road and surface hazards, close proximity and/or contact with thick smoke and open flames, barbed wire, pipes, and electric shocks); 3) equipment related hazards (e.g., broken, defective or inadequate competition equipment, unexpected equipment failure, imperfect course conditions); 4) weather-related hazards (e.g., extreme heat, extreme cold, humidity, ice, rain, fog); 5) inadequate or negligent first aid and/or emergency measures; 6) judgment and/or behavior-related problems (e.g., erratic or inappropriate co-participant or spectator behavior, erratic or inappropriate behavior by the participant, errors in judgment by personnel working the event; and 7) natural hazards (e.g. uneven terrain, rock falls, lightning strikes, earthquakes, wildlife attacks, contact with poisonous plants, marine life and/or ticks).

I further understand and acknowledge that any of these risks, and others not specifically named, may cause injury or injuries that may be categorized as minor, serious, or catastrophic. Minor injuries are common and include, but are not limited to: scrapes, bruises, sprains, strains, muscle tension and soreness, nausea, cuts, sunburn, abrasions, grazes, lacerations, and contusions. Serious injuries are less common, but do sometimes occur. They include but are not limited to property loss or damage, broken bones, fractures, torn or strained ligaments and tendons, concussions, exposure, dehydration, heat exhaustion and other heat-related illnesses, mental stress or exhaustion, infection, vomiting, dislocations, hyperthermia, hypothermia, anemia, electrolyte imbalance, loss of consciousness, syncope, dizziness, fainting, seizures, electric shock and/or injury, and neurological disorders/pain. Catastrophic injuries are rare; however, we feel that our participants should be aware of the possibility. These injuries can include, but are not limited to permanent disabilities, stroke, single or multiple organ failure or dysfunction, physical damage to organs, spinal injuries, paralysis, heart attack, heart failure, blood cell disorder, brain swelling, and even death.

I also understand that it is my responsibility to consult with my personal physician prior to my or my minor child/ward participating in the Mudderella event to ensure that such participation will not pose any unusual risks to my health and well-being.

I understand that it is my responsibility to inspect the course, facilities, equipment, and areas to

be used, and if I believe or become aware that any are unsafe or pose unreasonable risks, I agree to immediately notify appropriate personnel. By participating in the event, I am acknowledging that I have found the course, facilities, equipment, and areas to be used to be safe and acceptable for participation. I accept full and sole responsibility for the condition and adequacy of my equipment.

I understand fully the inherent risks my (and/or my minor child/ward) participating in the Mudderella event and assert that I (and/or my minor child/ward) am/are willingly and voluntarily participating in the event. I have read the preceding paragraphs and acknowledge that 1) I know the nature of the Mudderella event; 2) I understand the demands of this activity relative to my (and/or my minor child/ward's) physical condition; and 3) I appreciate the potential impact of the types of injuries that may result from the Mudderella event. I hereby assert that I knowingly assume all of the inherent risks of the activity on behalf of myself and/or on behalf of my minor child/ward and take full responsibility for any and all damages, liabilities, losses, or expenses that I (and/or my minor child/ward) may incur as a result of participating in the Mudderella event.

Waiver of Liability for ORDINARY NEGLIGENCE: In consideration of being permitted to participate in the Mudderella event, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, I (on behalf of the Releasing Parties) hereby forever waive, release, covenant not to sue, and discharge BK Bridge Events LLC and the other Released Parties from any and all claims resulting from the INHERENT RISKS of the Mudderella event or the ORDINARY NEGLIGENCE of BK Bridge Events LLC (or other Released Parties) that I (and/or my minor child/ward) may have arising out of my (and/or my minor child/ward's) participation in the Mudderella event.

This agreement applies to 1) personal injury (including death) from incidents or illnesses arising from the Mudderella event participation, which includes injury during course inspection, observation, practice runs, the event, medical treatment, and while on the premises (including, but not limited to base area, stands, sidewalks, parking areas, sponsor promotions, restrooms, first-aid tents, and dressing facilities); and 2) any and all claims resulting from damage to, loss of, or theft of property.

…. Initial  Indemnification Agreement: In consideration of being permitted to participate in the Mudderella event and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, I hereby agree to hold harmless, defend and indemnify BK Bridge Events LLC (and the other Released Parties) from and against: 1) Any and all claims made by me((and/or my minor child/ward) (or any Releasing Party) arising from injury or loss due to my (and/or my minor child/ward's) participation in the Mudderella event; and 2) Against any and all claims of co-participants, rescuers, and others arising from my (and/or my minor child/ward's) conduct in the course of my(and/or my minor child/ward's) participation in the Mudderella event. For the purposes hereof, "claims" includes all actions and causes of action, claims, demands, losses, costs, expenses and damages, including legal fees and related expenses. This indemnity shall survive the expiration or sooner termination of the Mudderella event.

Other Agreements

Venue and Jurisdiction: I understand that if Mediation and Arbitration prove unsuccessful and legal action is brought, the appropriate state or federal trial court for the state in which the Mudderella event is held has the sole and exclusive jurisdiction and that only the substantive laws of the State in which the Mudderella event is held shall apply.

Severability: I understand and agree that this Assumption of Risk, Waiver of Liability, and Indemnification Agreement is intended to be as broad and inclusive as is permitted by the state in which the Mudderella event is held and that if any provision shall be found to be unlawful, void, or for any reason unenforceable, then that provision shall be severed from this Agreement and does not affect the validity and enforceability of any remaining provisions.

Integration: I affirm that this agreement supersedes any and all previous oral or written promises or agreements.  I understand that this is the entire Agreement between me and BK Bridge Events LLC and cannot be modified or changed in any way by representations or statements by any agent or employee of BK Bridge Events LLC.  This Agreement may only be amended by a written document duly executed by all parties.

Mediation and Arbitration: In the event of a legal issue, I agree to engage in good faith efforts to mediate any dispute that might arise. Any agreement reached will be formalized by a written contractual agreement at that time. Should the issue not be resolved by mediation, I agree that all disputes, controversies, or claims arising out of my participation in the Mudderella event shall be submitted to binding arbitration in accordance with the applicable rules of the American Arbitration Association then in effect.  The cost of such action shall be shared equally by the parties.

Class Actions: I agree that any arbitration, mediation, or legal action shall proceed solely on an individual basis without the right for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others. Claims may not be joined or consolidated unless agreed to in writing by all parties.

Agreements for the Protection of Participants:
• I represent and warrant that I (and/or my minor child/ward) am/are in good health and in proper physical condition to safely participate in the Mudderella event. I certify that I (and/or my minor child/ward) have no known or knowable physical or mental conditions that would affect my/our ability to safely participate in the Mudderella event, or that would result in my/our participation creating a risk of danger to myself or to others.
• I represent and warrant that I (and/or my minor child/ward) am in full command of my faculties and am not under the influence of alcohol or drugs.
• I agree not to participate in a Mudderella event while under the influence of alcohol and/or drugs.
• I acknowledge that BK Bridge Events LLC recommends and encourages each client to get medical clearance from his/her personal physician prior to participation.
• I assert that I (and/or my minor child/ward) have not been advised or cautioned against participating by a medical practitioner.
• I understand that it is my responsibility to continuously monitor my own (and/or my minor

child/ward's)  physical and mental condition during the Course, and I agree to withdraw immediately and notify appropriate personnel if at any point my continued participation would create a risk of danger to myself or to others.  I understand that I am not required to complete any obstacle on course.

- I represent and warrant that I (and/or my minor child/ward)  am covered by medical insurance.
- In the event of an injury to me (and/or my minor child/ward)  that renders me (and/or my minor child/ward) unconscious or incapable of making a medical decision, I authorize appropriate BK Bridge Events LLC personnel and emergency medical personnel at the event to make emergency medical decisions on my (and/or my minor child/ward's)  behalf (including, but not limited to CPR and AED).  I understand that certain obstacles which put me temporarily out of sight may result in a delay of immediate medical attention.
- I authorize BK Bridge Events LLC to secure emergency medical care or transportation (i.e., EMS) when deemed necessary by BK Bridge Events LLC.
- I agree to assume all costs of emergency medical care and transportation.
- I acknowledge that BK Bridge Events LLC has instituted its rules for the protection of the participant and co-participants. I agree to familiarize myself with those rules and follow them throughout the event. I also recognize the authority of BK Bridge Events LLC to halt my participation (and, if necessary, have me removed from the premises) if my participation, conduct, or presence endangers myself or my co-participants.

Entry and Participation Agreements:
Rules: I agree to become familiar with and abide by all written and/or posted rules of BK Bridge Events LLC, as well as all written and/or posted rules of the Venue.  I further agree to comply with all directions, instructions and decisions of BK Bridge Events LLC and Venue personnel. I further agree not to challenge these rules, directions, instructions, or decisions on any basis at any time.

Emergency Delay or Cancellation:  I acknowledge that BK Bridge Events LLC at its sole discretion may delay, modify, or cancel the Mudderella event if conditions or natural or man-made emergencies make administering the event unreasonably difficult or unsafe.  I agree that "emergency" is defined to mean any event beyond the control of BK Bridge Events LLC, including but not limited to: high wind, extreme rain or hail, hurricane, tornado, earthquake, flood, acts of terrorism, fire, threatened or actual strike, labor difficulty or work stoppage, insurrection, war, public disaster, and unavoidable casualty. In the event of a delay, modification, or cancellation of the Mudderella event as described in this paragraph, I understand that I will not be entitled to a refund of my entry fee or any other costs incurred in connection with the Mudderella event.

Govern Participation: I understand that BK Bridge Events LLC has the authority to issue instructions or directions relating to the manner of my safe participation in the Course or Related Activities and the authority to halt my participation in the Course or Related Activities at any time they deem it necessary to protect the safety of participants, spectators, and personnel; and/or promote fairness and the spirit of BK Bridge Events LLC.

Removal from Course: I understand that BK Bridge Events LLC and Venue personnel may

immediately cause anyone who disobeys any rules, directions, instructions, decisions, or laws, or whose behavior endangers safety or negatively affects a person, facility, or property of any type or kind, to be removed from the Course.

Fee Refunds: I understand that all fees and associated costs (including optional product purchases, spectator tickets, and donations), paid in registration for this Mudderella event are not refundable for any reason under any circumstances, including but not limited to injury, a scheduling conflict, and/or event cancellation.
Military: I understand that active duty or deployed military participants may be entitled to a refund on a case-by-case basis upon providing sufficient, official documentation regarding the deployment that conflicts with participating in the event.

Attitude and Behavior: I also agree to exhibit appropriate behavior at all times, demonstrate respect for all people, equipment, and facilities, and participate with a cooperative and positive attitude.

Alcohol & Drugs: I certify that I am not, and on the date of the Mudderella event will not be, under the influence of alcohol or any non-prescription drugs that would in any way impair my ability to safely participate in the Mudderella event. I further understand that the consumption of any alcohol and any illicit or illegal drugs or substances during the event is strictly prohibited. BK Bridge Events LLC will only allow the responsible consumption of alcohol after the Mudderella event. The consumption of any illicit or illegal drugs or substances before, during, and after the Mudderella event is strictly prohibited. I agree to take full responsibility for any alcohol consumption at the Event.

Specific Rules: I specifically acknowledge and agree to abide by the following rules: 1) no urination or defecation is permitted outside of designated areas; 2) no wheeled conveyances or pets are allowed in the Course at any time; 3) no clothing, props or equipment that pose an unnecessary risk to participants, spectators or personnel are permitted; and 4) obey civil and criminal laws including traffic laws.

Photography: I understand that any and all photographs, motion pictures, recordings, and/or likenesses of me (and/or my minor child/ward) captured during the Mudderella event by BK Bridge Events LLC, its affiliated entities or contractors, and/or the media become the sole property of BK Bridge Events LLC. I grant the right, permission and authority to BK Bridge Events LLC and its designees to use my (and/or my minor child/ward's) name and any such photographs, motion pictures, recordings, and/or likenesses for any legitimate purpose, including but not limited to promoting, advertising, and marketing activities. I further understand that BK Bridge Events LLC and its designees have the full right to sell and/or profit from the commercial use of such photographs, motion pictures, recordings, and/or likenesses.

Acknowledgment of Understanding: I have read this Assumption of Risk, Waiver of Liability, and Indemnification Agreement and fully understand its terms. I understand that I (and/or my minor child/ward) am/are giving up substantial rights, including my/our right to sue. I further acknowledge that I (and/or my minor child/ward) am/are freely and voluntarily signing the agreement and participating in the Mudderella event, and intend my signature to be a complete

and unconditional release of all liability due to ORDINARY NEGLIGENCE of BK Bridge Events LLC (and other Released Parties) or the INHERENT RISKS of the activity, to the greatest extent allowed by law in the State in which the Mudderella event is held.

IF I AM A PARENT OR GUARDIAN OF A PARTICIPANT UNDER THE AGE OF MAJORITY WHO IS PARTICIPATING IN THE MUDDERELLA EVENT ("MINOR CHILD/WARD"), I HEREBY GIVE MY APPROVAL FOR MINOR CHILD/WARD'S PARTICIPATION IN THE MUDDERELLA EVENT, REPRESENT THAT THE MINOR CHILD/WARD IS IN GOOD  PHYSICAL CONDITION AND ACKNOWLEDGE THAT I HAVE REVIEWED UNDERSTOOD AND AGREE TO THE TERMS HEREIN (SUCH TERMS BEING INTERPRETED AS IF THEY APPLIED TO BOTH ME AND THE MINOR CHILD/WARD) AND HAVE THE LEGAL AUTHORITY TO ENTER INTO THIS ASSUMPTION OF RISK, WAIVER OF LIABILITY AND INDEMNIFICATION AGREEMENT ON BEHALF OF THE MINOR CHILD/WARD.

2. Refund Policy - Click Below to Agree
I hereby understand and acknowledge that all fees and associated costs (including optional product purchases, spectator tickets, and donations), paid in registration for this Mudderella event are NOT REFUNDABLE FOR ANY REASON, under any circumstances, including but not limited to injury, a scheduling conflict, and/or event cancellation.  I also understand that active duty or deployed military participants may be entitled to a refund on a case-by-case basis upon providing sufficient, official documentation regarding the deployment that conflicts with participating in the event.

3. Do you meet the Mudderella age requirement? You must be 16+ to participate.
I confirm that I will be at least 16 years of age on the date of the event.